## County of Lackawanna v. Verrastro

*Lawrence J. Moran,* for plaintiff.

*Frank J. Ruggiero,* for defendants HARIE and Foxco.

*Robert Cecchini* and *Brian Cali,* for defendant Verrastro.

MINORA, *J.,* June 4, 2009—Before the court are two sets of preliminary objections filed by the plaintiff/counterclaim defendant County of Lackawanna, against the defendants/counterclaim plaintiffs Housing and Redevelopment Insurance Exchange (HARIE) and Foxco Insurance Management Services, Inc.'s counterclaims.

## I. BACKGROUND

Lackawanna commenced this action by filing its complaint in the Court of Common Pleas of Lackawanna County on April 2, 2008. Lackawanna seeks insurance coverage for damages sustained as a result of the February 14, 2007[1] roof collapse at the Montage Mountain Amphitheater following a heavy snow storm.

Details on the relationship among the parties and events as alleged in Lackawanna's complaint are as follows. Defendant HARIE issued commercial property insurance policies to Lackawanna. Defendant Foxco performs the active management of defendant HARIE's insurance business pursuant to an attorney-in-fact agreement, through which Foxco is charged with handling the daily management of HARIE and providing insurance expertise and data processing facilities for the necessary

---

1. The exact date on which the loss occurred is not clear, as the different parties refer to the loss as occurring on either February 14, 2007 or February 15, 2007. The damage has been attributed to snow accumulation from a storm that blanketed Northeastern Pennsylvania which came to be known as the "Valentine's Day Storm" during its occurrence.

record keeping and reporting required of HARIE. Defendant Verrastro was the agent, servant, representative and employee of defendants HARIE and Foxco, and used the Foxco address as his principal place of business. Defendant Verrastro entered a "coordinator agreement for independent insurance coordinator" with Lackawanna County on March 1, 2004 with the knowledge, consent and approval of defendants HARIE and Foxco, and was designated by the county to be available for "independent consultant services." Lackawanna's complaint alleges that pursuant to the express terms of the coordinator agreement, Verrastro was not an employee of Lackawanna County.

Lackawanna states that HARIE, through Foxco, issued a commercial property insurance policy to Lackawanna covering an amphitheater owned by Lackawanna on Montage Mountain Road in Lackawanna County. The period of alleged coverage on the policy was July 15, 2006 through July 15, 2007. Lackawanna asserts they made timely premium payments and performed all obligations triggering coverage under the policy. According to Lackawanna, said policy covered other county property including but not limited to the Montage Ski Area, which is separate and distinct from the amphitheater but insured under the same policy.

According to Lackawanna's complaint the Montage Ski Area was sold to Snö Mountain L.P. at a real estate closing that occurred on November 6, 2006. Lackawanna argues that it had not sold the amphitheater property covered under the policy at this closing or any other time during the time the subject policy was in effect. Lackawanna argues that at all times relevant, defendants knew, or should have known, that the Montage Ski Area was

separate and distinct from the amphitheater. Lackawanna asserts defendant knew, or should have known, the properties were distinct, *e.g.,* as was demonstrated through the following: (a) the line item schedule of insured properties in the policy, (b) the attorney-in-fact agreement between co-defendants HARIE and Foxco, (c) through various press coverages, and (d) through the personal knowledge of the defendants.

Lackawanna states that it had acquired a separate general liability policy for the properties at Montage Mountain from Nautilus Insurance Companies. Lackawanna further states that according to his coordinator agreement, Verrastro agreed to perform consultant services, and agreed to be the "point of origin" for all property and casualty policies required by Lackawanna County. Further pursuant to his agreement, Verrastro was held responsible for managing and monitoring the policies, which included monitoring dates and limiting duplication of coverage.

As an agent, servant, representative and employee of Foxco, Lackawanna holds defendant Verrastro responsible for the active management of HARIE's business and its daily management. As an element of his consultant services to the county, and while Verrastro was an agent, servant, representative, and employee of defendants HARIE and Foxco, he allegedly signed a premium financing agreement with Northeast Premium Financing Company Inc. (NEPCO) on August 9, 2006, binding Lackawanna County to a debt of $103,192.80 in connection with insuring Lackawanna's property at Montage Mountain.

On or about February 14, 2007, during which time Lackawanna alleges the insurance policy was in effect,

the amphitheater at Montage Mountain sustained damages amounting to $1,630,262.36.

Following the damage, a meeting was held on February 23, 2007 with attendees Verrastro, Charles Volpe, president and attorney-in-fact of Foxco, and then-majority Commissioner Robert Cordaro to discuss the damage. Verrastro allegedly told Cordaro that no insurance covered the loss because the insurance policy on the property was cancelled on January 15, 2007, purportedly effective December 1, 2006.

Lackawanna argues that at no time had it cancelled or authorized anyone to cancel insurance on the amphitheater. Lackawanna alleges it received the January 15, 2007 notice of cancellation after the February 14, 2007 loss at issue, which stated the reason for the cancellation as being "no longer owned by Lackawanna County."

Lackawanna argues that the cancellation provisions governing the subject policy establish that coverage was never cancelled, in that: Nautilas nor defendants ever mailed a written cancellation and defendants never mailed out the notice of cancellation to the insured's address. Lackawanna takes issue with the reason given for the notice of cancellation, *i.e.,* Lackawanna no longer owning the property, when that was never the case.

Lackawanna further attempts to establish that the policy was not rightfully cancelled because Lackawanna had not received its premium refund, due within 30 days as required under the policy.

Lackawanna argues that Verrastro knew, or should have known, while in his position as provided for in his coordinator agreement, that the amphitheater was covered under the subject policy.

Details on the purported cancellation of the policy were provided as follows. Allegedly on January 15, 2007, defendant Verrastro caused a notice of cancellation to be issued, at which time Verrastro was canceling the general liability policy with Nautilus. On December 1, 2006, Verrastro wrote a letter to J.D. Insurance Consultants on Foxco letterhead requesting cancellation of the general liability policy "NC437249" effective December 1, 2006. This request was made by Verrastro, as the Lackawanna County Insurance Coordinator. This letter allegedly contained three errors, (1) the policy number was misidentified, (2) the cancellation was addressed to the wrong party, and (3) he erroneously put the letter on Foxco letterhead.

Having been informed of the mistakes, Verrastro then writes the same letter on county letterhead, addressing it to "Insurance Markets Agency Inc." in Clarks Summit, PA, but the same, incorrect policy number, "NC437249," was placed in the letter.

On January 17, 2008, just after the new majority county commissioners took office, Lackawanna filed a claim seeking $1,630,262.36 for the storm damage to the amphitheater. The claim was denied through a letter from HARIE dated January 29, 2008, citing the reason for the denial being due to the sale of the property that housed the pavilion. Lackawanna argues that even the most cursory of investigations by defendants would have found that the amphitheater property had not been sold in the real estate transaction.

The counts asserted in Lackawanna's complaint are as follows:

• *Count I—breach of contract (Lackawanna v. defendant HARIE)*

42

- *Count II—bad faith, 42 Pa.C.S. §8371 (Lackawanna v. defendant HARIE)*

- *Count III—Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PS §201-1 (Lackawanna v. defendant HARIE)*

- *Count IV—negligence and breach of fiduciary duty (Lackawanna v. defendant HARIE)*

- *Count V—respondeat superior (Lackawanna v. defendant HARIE)*

- *Count VI—breach of contract (Lackawanna v. defendant Foxco)*

- *Count VII—bad faith, 42 Pa.C.S. §8371 (Lackawanna v. defendant Foxco)*

- *Count VIII—Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PS §201-1 (Lackawanna v. defendant Foxco)*

- *Count IX—negligence and breach of fiduciary duty (Lackawanna v. defendant Foxco)*

- *Count X—respondeat superior (Lackawanna v. defendant Foxco)*

- *Count XI—negligence and breach of fiduciary duty (Lackawanna v. defendant Verrastro)*

In response to Lackawanna's complaint, defendant HARIE and defendant Foxco each filed separate but identical preliminary objections on April 21, 2008, with a joint brief in support filed May 27, 2008. Lackawanna filed its answer and new matter to defendants' preliminary objections on May 9, 2008. Lackawanna filed its brief in opposition to defendants' preliminary objections on

June 24, 2008. Defendant Verrastro filed preliminary objections on April 23, 2008, with his supporting memorandum of law filed on May 1, 2008. Lackawanna filed its answer and new matter to defendant Verrastro's preliminary objections on May 9, 2008, and its brief in opposition to defendant Verrastro's preliminary objections on June 24, 2008.

An oral argument was held before this court on July 14, 2008 on these matters as well as those concerning the companion action at 08 CV 961. On August 29, 2008 this court issued an opinion resolving all of the defendants' cumulative preliminary objections. Pursuant to said opinion Count II of Lackawanna's complaint was modified, Count III was dismissed, Count VII was modified, and Count VIII was dismissed.

On October 20, 2008 defendant Foxco filed an answer, with new matter and counterclaims to Lackawanna's complaint. On the same day defendant HARIE also filed an answer, with new matter and counterclaims to Lackawanna's complaint. The counts asserted in defendant Foxco's counterclaim are as follows:

• *Count I—fraud (Foxco v. Lackawanna County)*

• *Count II—civil conspiracy (Foxco v. Lackawanna County)*

• *Count III—defamation (Foxco v. Lackawanna County)*

The counts asserted in defendant HARIE's counterclaim are as follows:

• *Count I—fraud (HARIE v. Lackawanna County)*

• *Count II—civil conspiracy (HARIE v. Lackawanna County)*

• *Count III—tortious interference with existing contractual relations (HARIE v. Lackawanna County)*

• *Count IV—tortious interference with prospective contractual relations (HARIE v. Lackawanna County)*

• *Count V—defamation (HARIE v. Lackawanna County)*

In response to defendants HARIE and Foxco's counterclaims, Lackawanna filed preliminary objections to the counterclaims, in the nature of a demurrer, on November 10, 2008. On January 5, 2009, Lackawanna filed briefs in support of its preliminary objections. On February 9, 2009, defendants HARIE and Foxco filed briefs in opposition to Lackawanna's preliminary objections. An oral argument was held before this court on March 5, 2009, on the matter of Lackawanna's preliminary objections to the counterclaims. At said oral argument Foxco's counsel withdrew Count III, defamation, of their counterclaim. Counsel for HARIE also withdrew Count III, tortious interference with existing contractual relations, and Count V, defamation of their counterclaim. Lackawanna's preliminary objections to defendants HARIE and Foxco's remaining counterclaims are now ripe for disposition.

## II. DISCUSSION

### A. *Preliminary Objections Standard*

Pa.R.C.P. 1028(a) provides the standard for preliminary objections. As stated by the Commonwealth Court

in *Richardson v. Beard,* 942 A.2d 911, 913 (Pa. Commw. 2008):

"In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. *Sheffield v. Department of Corrections,* 894 A.2d 836 (Pa. Commw. 2006). Preliminary objections will be sustained only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. *Id.* We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Myers v. Ridge,* 712 A.2d 791 (Pa. Commw. 1998)."

"Preliminary objections in the nature of [a] demurrer test the legal sufficiency of the [Lackawanna's] complaint." *Sexton v. PNC Bank,* 792 A.2d 602, 604 (Pa. Super. 2002) (citation omitted), *appeal denied,* 572 Pa. 725, 814 A.2d 678 (2002). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Mistick Inc. v. Northwestern National Casualty Company,* 806 A.2d 39, 42 (Pa. Super. 2002). (citation omitted) Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. *Cooper v. Frankford Health Care System Inc.,* 960 A.2d 134 (Pa. Super. 2008). Any doubt as to the legal sufficiency of the complaint should be resolved in favor of overruling the demurrer. *Kane v. State Farm Fire &*

*Casualty Company,* 841 A.2d 1038, 1041 (Pa. Super. 2003).

### 1. Preliminary Objections of Lackawanna to Defendant Foxco's Counterclaims

Lackawanna submitted the following preliminary objections to Foxco's counterclaim:

### a. *Demurrer, Pa.R.C.P. 1028(a)(4), to Foxco's counterclaim Count I, fraud*

The test for fraud is: (1) a misrepresentation; (2) a fraudulent utterance; (3) an intention by the maker that the recipient will thereby be induced to act; (4) justifiable reliance by the recipient upon the misrepresentation; and (5) damage to the recipient as a proximate result. *B.K.B. v. J.G.K.,* 954 A.2d 630, 637 (Pa. Super. 2008). Fraud must be averred with particularity, Pa.R.C.P. 1019(b), and it must be proven by clear and convincing evidence. *Ellison v. Lopez,* 959 A.2d 395, 398 (Pa. Super. 2008). Each of the aforementioned elements must be proven by clear and convincing evidence. *Blumenstock v. Gibson,* 811 A.2d 1029, 1034 (Pa.Super. 2002).

A misrepresentation need not be an actual statement; it can be manifest in the form of silence or failure to disclose relevant information when good faith requires disclosure. *Glover v. Severino,* 946 A.2d 710, 713 (Pa. Super. 2008). The deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than does an intentional affirmation of a material falsity. *Donahue v. W.C.A.B. (Philadelphia Gas Works),* 856 A.2d 230, 236 n.14 (Pa. Commw. 2004), see also, *Neuman v.*

*Corn Exchange National Bank & Trust Company,* 356 Pa. 442, 451-52, 51 A.2d 759, 764 (1947).

"Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech *or silence,* word of mouth, or look or gesture." *Glover, supra* at 713. (emphasis in original)

A misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. "One deceived need not prove that fraudulent misrepresentation was the sole inducement to the investment of money, a material inducement is sufficient." *Eigen v. Textron Lycoming Reciprocating Engine Division,* 874 A.2d 1179, 1186 (Pa. Super. 2005). (citations omitted)

"To be justifiable, reliance upon the representation of another must be reasonable. . . . Whether the party claiming to have been defrauded relied upon the false representation is a question of fact." *Eigen, supra* at 1189 (Pa. Super. 2005). (citations omitted) Furthermore, the issue of justifiable reliance cannot be resolved without considering the relationship of the parties involved and the nature of the transaction. *Drelles v. Manufacturers Life Insurance Company,* 881 A.2d 822, 841 (Pa. Super. 2005).

Under Pennsylvania law, in an action based on fraud, the measure of damages is "actual loss", and not the benefit, or value, of that bargain. *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 117, 464 A.2d 1243, 1257 (1983) (citation omitted), see also,

*Skurnowicz v. Lucci,* 798 A.2d 788, 795 (Pa. Super. 2002). The victim is entitled to all pecuniary losses which result as a consequence of his reliance on the truth of the representations. *Id.*

Under Pennsylvania law, the right to punitive damages is a mere incident to a cause of action, and "[a] claim for punitive damages arises out of the underlying cause of action." Dillow v. Myers, 916 A.2d 698, 702 (Pa. Super. 2007), see also, *Hilbert v. Roth,* 395 Pa. 270, 276, 149 A.2d 648, 652 (1959). Under Pennsylvania law, a request for punitive damages does not constitute a cause of action in and of itself. *Christopher v. Hurwitz,* 2006 WL 1791594 (Pa. Com. Pl. 2006) (Phila. Cty.). One cannot recover punitive damages independently from an underlying cause of action. *DiGregorio v. Keystone Health Plan East,* 840 A.2d 361, 370 (Pa. Super. 2003). If no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages are only an element of damages. *Id.* Punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct. *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania,* 929 A.2d 1169 (Pa. Super. 2007).

"Generally, the plaintiff in an action for fraud may recover all actual losses caused by the defendant's fraud.[2] The plaintiff may also recover punitive damages where

---

2. *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 455, 51 A.2d 759, 766 (1947); *Lokay v. Lehigh Valley Cooperative Farmers Inc.,* 342 Pa. Super. 89, 99, 492 A.2d 405, 410 (1985); *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 117, 464 A.2d 1243, 1257 (1983).

there are aggravated circumstances. . . . However, it is fraud which is the basis for the recovery of compensatory damages, and the same fraud is not alone a sufficient basis upon which to premise an award of punitive damages. . . . If the rule were otherwise, punitive damages could be awarded in all fraud cases. This is not the law. The rule, rather, is that for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others." *Smith v. Renaut,* 387 Pa. Super. 299, 309, 564 A.2d 188, 193 (Pa. Super. 1989). (citations omitted)

"Though this rule seems to require the plaintiff to meet an additional burden, it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." *Delahanty, supra* at 130, 464 A.2d at 1263.

"It is well established that a litigant is responsible for his own counsel fees absent an agreement by the parties or some other established exception. . . . Unfortunately . . . , there is no established exception which permits recovery of attorney fees in an action for fraud." *Pittsburgh Live Inc. v. Servov,* 419 Pa. Super. 423, 429-30, 615 A.2d 438, 441-42 (1992). (citations omitted)

Foxco has failed to sufficiently plead two elements of the cause of action of fraud. These two elements are justifiable reliance and damages. Foxco asserts the element of justifiable reliance is met by their defending the Lackawanna's lawsuit and the filing of the counterclaims. However, Foxco cannot cite governing law for this unique argument.

Defending a lawsuit does not make out the element of justifiable reliance for fraud. This element requires the party to have reasonably relied upon the false representation of the other party, thus giving rise to the cause of action. Here, Foxco asserts that the false or misrepresentation of Lackawanna is the claim that insurance coverage existed for the loss that occurred on February 14, 2007. Foxco however denied the claim, never paid out any insurance proceeds, and claims the coverage was not in existence at the time. Foxco never acted on the alleged false/misrepresentation of Lackawanna. And the question of whether or not insurance coverage was in existence for the damage caused on February 14, 2007 is the entire basis of Lackawanna's lawsuit. As such, we are compelled to conclude defendant Foxco has not properly pled the element of justifiable reliance.

Further, Foxco has not sufficiently pled the element of damages. Foxco asserts that they have suffered attorney's fees and the cost of defending this lawsuit as damages. As stated above, there is no case law which supports a claim for attorney's fees as damages for fraud. As Foxco has not made out a recoverable claim for fraud; Foxco could not sustain the ancillary claim for punitive damages, which derives from the fraud. Therefore, Foxco has not sufficiently/properly pled either the fraud or the element of damages.

Accordingly, Foxco's counterclaim for fraud lacks two essential elements of the tortious cause of action, justifiable reliance and damages. Therefore, no recovery on their fraud claim is legally possible. Lackawanna's preliminary objection to Foxco's counterclaim Count I, fraud is hereby granted and the counterclaim is dismissed.

### b. Demurrer, Pa.R.C.P. 1028(a)(4), to Foxco's counterclaim Count II, civil conspiracy

The elements of "a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Phillips v. Selig,* 959 A.2d 420, 437 (Pa. Super. 2008). Proof of a conspiracy must be made by full, clear and satisfactory evidence. *Id.* "Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.,* quoting *McKeeman v. Corestates Bank N.A.,* 751 A.2d 655, 660 (Pa. Super. 2000).

Foxco's claim for civil conspiracy is based upon their claim for fraud. They assert that Lackawanna and their agents conspired to defraud Foxco. As we have already concluded that Foxco has not sufficiently pled their claim for fraud, we are once again compelled to conclude that their cause of action for civil conspiracy cannot stand. There can be no cause of action for civil conspiracy without an underlying object cause of action giving rise to the inchoate civil conspiracy. Lackawanna's preliminary objection to Foxco's counterclaim Count II, civil conspiracy is hereby granted and the counterclaim is dismissed.

### c. Demurrer, Pa.R.C.P. 1028(a)(4), to Foxco's counterclaim Count III, defamation

As counsel for Foxco withdrew this count of their counterclaim at the March 5, 2009 oral argument, Lackawanna's preliminary objection is deemed moot.

## 2. Preliminary Objections of Lackawanna to Defendant HARIE's Counterclaim

Lackawanna submitted the following preliminary objections to HARIE's counterclaim:

### a. *Demurrer, Pa.R.C.P. 1028(a)(4), to HARIE's counterclaim Count I, fraud*

Lackawanna's demurrer to HARIE's counterclaim Count I, fraud, is granted, consistent with this court's ruling on Lackawanna's demurrer to Foxco's counterclaim of fraud.

### b. *Demurrer, Pa.R.C.P. 1028(a)(4), to HARIE's counterclaim Count II, civil conspiracy*

Lackawanna's demurrer to HARIE's counterclaim Count II, civil conspiracy, is granted, consistent with this court's ruling on Lackawanna's demurrer to Foxco's counterclaim of civil conspiracy.

### c. *Demurrer, Pa.R.C.P. 1028(a)(4), to HARIE's counterclaim Count III, tortious interference with existing contractual relations*

As counsel for HARIE withdrew this count of their counterclaim at the March 5, 2009 oral argument, Lackawanna's preliminary objection is deemed moot.

### d. *Demurrer, Pa.R.C.P. 1028(a)(4), to HARIE's counterclaim Count IV, tortious interference with prospective contractual relations*

"The elements of a cause of action for intentional interference with a contractual relation, whether existing

or prospective, are as follows: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as the result of the defendant's conduct." *Blackwell v. Eskin,* 916 A.2d 1123, 1127-28 (Pa. Super. 2007). (citation omitted)

Prospective contractual relationships can be difficult to define. To a certain extent, the term has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope. We are not dealing with certainties, but with reasonable likelihood or probability. There must be something more than a mere hope or the innate optimism of the salesman. *Phillips, supra* at 428.

To determine the reasonable likelihood or probability of a prospective contractual relationship, courts must apply an objective standard. *Id.* Pennsylvania courts have consistently required more evidence than the existence of a current business or contractual relationship. *Id.* at 429.

Defendant HARIE has identified no prospective contractual relationships which Lackawanna has interfered with. Defendant HARIE generally asserts that statements made by Lackawanna and their agents were harmful to their business. As the case law indicates more than generalities need to plead in order to succeed on a claim for tortious interference with prospective contractual relationships.

As no prospective contractual relationship has been identified by defendant HARIE their claim for tortious interference with prospective contractual relationships is legally insufficient. Therefore, Lackawanna's preliminary objection to HARIE's counterclaim Count IV, tortious interference with prospective contractual relationship is hereby granted and the counterclaim is dismissed.

### e. *Demurrer, Pa.R.C.P. 1028(a)(4), to HARIE's counterclaim Count V, defamation*

As counsel for HARIE withdrew this count of their counterclaim at the March 5, 2009 oral argument, Lackawanna's preliminary objection is deemed moot.

An appropriate order follows.

### ORDER

And now, June 4, 2009, consistent with this court's memorandum, we sustain all the objections of plaintiff, County of Lackawanna, to defendants Housing and Redevelopment Insurance Exchange (HARIE) and Foxco Insurance Management Services Inc's counterclaims. The preliminary objections of Lackawanna are granted in their entirety, and all of defendants HARIE and Foxco's counterclaims are dismissed, either due to their voluntary withdrawal by HARIE and Foxco's counsel or by this court's rulings herein.